# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **KIRSTEN WILLIAMS** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Docket No: 2:15-cv-02150-STA-dkv |
| v. ) | |
| ) | |
| **AT&T MOBILITY SERVICES, LLC** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ORDER GRANTING PLAINTIFF'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Kirsten Williams filed this action against her former employer, AT&T Mobility Services, LLC ("AT&T"), alleging that AT&T violated her rights under the Americans with Disabilities Act (as amended), 42 U.S.C. § 12101 *et seq.* ("ADA"). (ECF No. 1.) Plaintiff has moved for partial summary judgment on the sole issue of whether, at the time of the relevant events, she was disabled as defined by 42 U.S.C. § 12102(1).[1] (ECF No. 40.) AT&T has filed a response to the motion (ECF No. 46), and Plaintiff has filed a reply to the response. (ECF No. 52.) For the reasons set forth below, Plaintiff's motion is **GRANTED**.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2]

---

[1] Defendant AT&T's motion for summary judgment is pending. (ECF No. 38.)

[2] Fed. R. Civ. P. 56(c).

When deciding a motion for summary judgment, the court must review all the evidence and draw all reasonable inferences in favor of the non-movant.[3] In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, and it "may not make credibility determinations or weigh the evidence."[4]

When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[5] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[6] The Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[7] The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."[8]

As an initial matter, the Court notes that both parties have expended considerable effort arguing that the opposing party has not sufficiently complied with Rule 56.1 of the

---

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[7] *Id.* at 251–52.

[8] *Celotex*, 477 U.S. at 322.

Local Rules of this Court.[9] AT&T contends that, instead of submitting a "concise statement of facts, the Plaintiff has filed a multi-paragraph, multi-sentence, unstructured broad based jumble of references to the Plaintiff's deposition testimony and to her deposition exhibits."[10] AT&T further contends that "[m]any of the paragraphs contain lengthy recitations that are neither material to nor relevant to the legal conclusion for which summary judgment is sought" and that "[s]ome of the recitations are incorrect."[11] AT&T objects to Plaintiff's statement of facts "in their entirety for non-conformity with the requirements of Local Rule 56.1(a)."[12]

Local Rule 56.1(a) requires that any motion for summary judgment be "accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial."[13] As noted by Plaintiff, the local rules do not define

---

[9] (Resp., pp. 1-3, ECF No. 46; Reply, pp. 1-4, ECF No. 52.)

[10] (Resp, p. 1, ECF No. 46.)

[11] (*Id.* at pp. 1-2.)

[12] (*Id.* at p. 2.)

[13] Local Rule 56.1 provides as follows:

> (a) Moving Party. In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Fed. R. Civ. P. 56 shall be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by a specific citation to the record. If the movant contends that the opponent of the motion cannot produce evidence to create a genuine issue of material fact, the proponent shall affix to the memorandum copies of the precise portions of the record relied upon as evidence of this assertion.....
>
> (b) Non-moving Party. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:(1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that

"concise statement," and she argues that her facts are "concise" within the meaning of the local rules.[14]

In denying a motion to strike the defendant's statement of undisputed material facts, the District Court for the Middle District of Tennessee determined that the defendant did not violate a local rule on conciseness that was worded similarly to the local rule at issue in this case because the dispute was "factually rich" and involved incidents occurring over a period of time.[15] The Court agreed with the defendant that all of the facts contained within the statement were "'relevant and material' either directly or as 'both background and [ ] foundation for the incidents which form the basis of Plaintiff's causes of action' and that [the defendant] was not trying to burden the plaintiff but merely generate a 'complete record.'"[16]

Likewise, this case is fact-intensive. Plaintiff's statement of facts is based on over 8,000 pages of discovery and consists of only ten pages with twenty-seven numbered paragraphs that address the facts underlying this lawsuit.[17] Although the paragraphs have

---

the fact is disputed. Each disputed fact shall be filed with any memorandum in response to the motion. The response must be made on the document provided by the movant or another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant. In addition, the non-movant's response may contain a concise statement of additional facts that the non-movant contends are material and as to which the nonmovant contends there exists a genuine issue to be tried. Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.

[14] (Reply, p. 4, ECF No. 52.)

[15] *See Thompson v. Davidson Transit Org.*, 740 F. Supp.2d 938, 938–39 (M.D. Tenn. 2010). *See also Day v. Finishing Brands Holding, Inc.*, 2015 WL 2345279127 * 1 (W.D. Tenn. May 14, 2015) (citing *Thompson*).

[16] *Thompson*, 740 F. Supp.2d at 939.

[17] (Reply, p. 4, ECF No. 52.)

multiple sentences, each sentence is related to the subject of the paragraph and is, therefore, neither "unstructured" nor a "broad based jumble of references" to the deposition testimony and exhibits.

While AT&T is correct that Plaintiff's "Exhibit S"[18] is actually an assessment by Allison Bigelow, a psychologist, rather than Dr. Akin, a psychiatrist, this one misnomer does not affect the content of the psychological assessment.[19] Accordingly, the Court finds that Plaintiff's statement of undisputed facts meets the criteria set forth in Local Rule 56.1(a).[20]

However, Plaintiff's argument that AT&T is not in compliance with the Federal Rules of Civil Procedure or the local rules of this Court is meritorious. AT&T filed a memorandum in response to Plaintiff's motion[21] but did not file a separate response to Plaintiff's statement of facts with citations to the record, nor did AT&T submit its own statement of additional facts.

As noted above, the local rules of this Court require motions for summary judgment to "be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial."[22] Plaintiff complied with the local

---

[18] (ECF No. 42-9.)

[19] The assessment by Dr. Bigelow states that Plaintiff was under the care of Dr. Akin Ojuwake, psychiatrist. Although AT&T asserts that "some" of Plaintiff's citations to the record are "incorrect," (Resp., p. 2, ECF No. 46), this is the only example given by AT&T.

[20] To the extent that Plaintiff has presented any facts that are not material or relevant to the issues presented by her motion, the Court will disregard those facts except as necessary to provide context or background. *C.f. Hillman v. Shelby Cty.*, 2012 WL 681778 at *1 (W.D. Tenn. Feb. 29, 2012) ("[C]ourts in the Western District of Tennessee do not strike inadmissible portions of affidavits; instead, they disregard the inadmissible testimony in their evaluation of the summary judgment motion before them.")

[21] (ECF No. 46.)

[22] LR 56.1(a), Local Rules of the United States District Court for the Western District of Tennessee.

rules by submitting such a statement of facts.[23] Any party opposing summary judgment must respond to each fact stated by the movant by agreeing that it is undisputed, agreeing that it is undisputed for purposes of ruling on the summary judgment motion only, or by demonstrating that the fact is disputed, with specific citations to the record.[24] "Failure to respond to a moving party's statement of material facts ... shall indicate that the asserted facts are not disputed for purposes of summary judgment."[25] Rule 56(e) of the Federal Rules of Civil Procedure also provides that if a party "fails to properly address another party's assertion of fact ..., the court may consider the fact undisputed for purposes of the motion."[26]

Because AT&T failed to properly respond to Plaintiff's statement of facts, those facts will be accepted as true for the purpose of deciding this motion.[27] The Court must now consider whether the undisputed facts show that Plaintiff was disabled as defined by 42 U.S.C. § 12102(1). The Court concludes that they do.

Plaintiff has presented the following undisputed facts in support of her motion for partial summary judgment.[28]

---

[23] (ECF 40-2.)

[24] LR 56.1(b).

[25] LR 56.1(d).

[26] Fed. R. Civ. P. 56(e)(2).

[27] *See, e.g., Meraz v. El Charro Billiards, LLC*, 2013 WL 5593062 (Oct. 10, 2013) ("El Charro has failed to respond to the Motion and the time to do so has passed. W.D. Tenn. L.R. 56.1(b). The facts asserted in Meraz's Statement of Undisputed Facts are taken as true for purposes of this Motion."); *Akines v. Shelby Cnty. Gov't*, 512 F. Supp.2d 1138 (W.D. Tenn. 2007) (explaining that, when the non-moving party fails to follow the local rule in responding to a motion for summary judgment, courts in this judicial district "consider the [moving party's] statement of undisputed material facts as having been admitted").

[28] (ECF No. 40-2.) The following facts relate to the issue of whether Plaintiff is disabled under the ADA. Facts that relate to the issue of whether AT&T reasonably accommodated Plaintiff's disability will be examined in the order on AT&T's motion for summary judgment.

Plaintiff was a Customer Service Representative with AT&T from 2006 to July 3, 2014, when she was terminated. Her job was to answer inbound calls and assist with technical support and billing at AT&T's call-center.

Plaintiff has been treated for depression by Dr. Atkin since 2007 until the present.[29] During periods of depression and anxiety, those impairments negatively affected her mood and ability to concentrate, think, learn, and communicate. As a result of her depression and prescribed medications, she also suffered from fatigue and difficulty sleeping, and she grew tearful. Her depression and anxiety affected her appetite, caused her to avoid social settings, avoid housework and exercise, neglect personal grooming, prevented her from cooking because she burned herself and the food, and limited her ability to care for her young son.

Plaintiff made job accommodation requests in late 2012 and May 2013 because of her mental health problems. She was granted Short Term Disability benefits ("STD") from September 6, 2013, until November 18, 2013, and again from December 3, 2013, to January 20, 2014. Plaintiff applied for leave under the Family Medical Leave Act ("FMLA") on December 12 and 20, 2013, January 10 and 13, 2014, April 4 and 29, 2014, and May 15 and 30, 2014, based on depression and the need for treatment.

On April 9, 2014, Plaintiff notified AT&T's Integrated Disability Service Center ("IDSC") that she left work mid-shift because of her depression and anxiety. She also informed IDSC that she had arranged a mental health appointment but it would not occur for two weeks because she was a new patient. On April 10, IDSC's internal notes corroborate Plaintiff's diagnosis relating to "mental health" and "date loss: 04/09/2014." On April 23,

---

[29] The assessment states that Plaintiff was under the care of Dr. Akin Ojuwake, psychiatrist. (ECF No. 42-9.) It appears that "Dr. Atkin" and Dr. Ojuwake are the same individual. However, it is not necessary at this juncture for the Court to resolve the difference in nomenclature.

medical evaluation forms were returned to IDSC. This paperwork showed that Plaintiff had been diagnosed with depressive disorder and anxiety. Plaintiff's medical provider was FNP Laura Thompson, and Dr. Candace Thompson provided psychiatric treatment. Plaintiff's conditions affected her concentrating, learning, thinking, and communicating.

On April 28, 2014, IDSC's internal notes record Plaintiff's "difficulty sleeping" … "abnormal interrupted thoughts … caused by depression and anxiety" … "needs through 8/15/14" … "1) 10 min break every 2 hrs, 2) flex start time [and 3)] modified break time for anxiety attacks."

On May 1, 2014, Plaintiff began treatment at Psycamore, LLC. On May 5, Plaintiff called IDSC, stating that "she is now attending [Partial hospital program]." On May 7, IDSC received an Initial Physician Statement ("IPS") from Psycamore. This documentation recorded Plaintiff's severe depression, its effects on her sleeping, difficulty arriving on time, cognitive impairment, and her need for intensive therapy Monday through Friday for the next six weeks.

On May 12, an e-mail exchange between IDSC and Human Resources confirmed that Plaintiff had called Priscilla Adams, AT&T's Employee Relations Manager "this morning" and "wouldn't be returning to work today [or in May] because she is in a program." On May 14, IDSC sent a letter to Plaintiff approving STD from April 17 to May 27 but requiring further medical documentation by May 26 if Plaintiff was unable to return to work.

IDSC's internal records cited documentation that confirmed Plaintiff's depression that affected her appetite, sleeping, and concentration and that she was seen on May 1, 2, 5, 6, and 7 "in IOP," i.e., intensive outpatient program. IDSC recorded that Plaintiff was in treatment that "impairs her ability to perform […] occupation even on part time basis." On May 19, Psycamore faxed medical documentation which restated details previously provided about

Plaintiff's depression, how it affected her daily life, the request for a modified schedule and projected end date of treatment, and added a comment about her "difficulty sleeping due to due to depression and anxiety."

On May 23, Plaintiff notified IDSC that she was discharged by Dr. Madikisira at Psycamore on May 21. Plaintiff had an appointment on "05/29/2014, with Laura Thompson" to be referred to another psychiatrist. On May 27, IDSC received documentation from Dr Madikisira at Psycamore stating that Plaintiff was discharged for noncompliance and could return to work as of May 23. However, on the same date of her discharge, Plaintiff was still in therapy Monday through Friday and had been projected by Dr. Madikisira to remain in treatment until June 13. On the day of her discharge, Plaintiff signed up for treatment with HealthQuest. On May 28, Plaintiff reminded IDSC of her appointment on May 29. Plaintiff also called Attendance-Manager Lisa Todd-Kyle ("Manager Todd") to let her know that her STD claim was denied but she remained under a doctor's care for depression and anxiety.

On May 30, Plaintiff again made a request for FMLA because of depression and provided medical documentation in support. On June 2, IDSC sent a letter to Plaintiff denying her STD as of May 28.

On June 3, Plaintiff called Manager Todd and confirmed that she remained in treatment for depression and anxiety and was unable to return to work by June 10. On June 11, IDSC received paperwork from Debra Butler, LCSW, with HealthQuest, documenting Plaintiff's depressed mood, increased anxiety with panic attacks, sleep and appetite disturbance, and rapid mood swings. Butler was program manager of HealthQuest and a licensed therapist. Butler estimated Plaintiff's treatment would continue for about four to six weeks. Butler confirmed that Plaintiff was "admitted to [intensive outpatient program] on 6/10/14" and in treatment three times a week with each session being three hours. On June 13,

Manager Todd called Plaintiff and was told that she was in week two of a ten week treatment program and more medical documents would be submitted.

On June 12, The Transformation Center, which operates therapy groups exclusively for women, submitted paperwork to IDSC. These documents were signed by Allison Bigelow, Ph.D./HSP. The paperwork listed Plaintiff's anxiety, depression, poor memory, and difficulty concentrating related to depression. The documents included a statement by Dr. Atkin referring to Plaintiff's January 2013 "breakdown – psychosis, paranoia, severely disorientated – occurred at work."[30]

On June 16, Butler faxed medical documents to IDSC and called to confirm that Plaintiff was under the care of her primary care provider between May 22 and June 9, the date she began treatment with HealthQuest. On June 17, Plaintiff faxed additional medical documents concerning her diagnosis of depression.

On June 20, IDSC received a fax from HealthQuest. This paperwork included an Initial Treatment Plan, dated June 10, estimating length of stay to be four to six weeks. It listed Plaintiff's anxiety, panic attacks, depression, and sleep difficulty and projected her return to work as August 6. Additionally, IDSC received notes about the therapy that Plaintiff had received on June 11, 16, 17, and 18, 2014.

On June 24, IDSC received a fax from The Transformation Center with an initial assessment of Plaintiff dated June 3, a history and current assessment of Plaintiff's depression and anxiety, which negatively affected her memory, and stating that its treatment program would begin that same date.

Plaintiff was fired as of July 3 for "job abandonment and unsatisfactory attendance." On August 8, IDSC reversed its denial of Plaintiff's STD and approved coverage for

---

[30] *See* note 31 *supra*.

disability benefits from May 28 to July 2, 2014.

The ADA provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[31] "Merely having an impairment does not make one disabled for purposes of the ADA."[32] Instead, "[a]n individual is considered 'disabled' under the ADA if she (1) 'has a physical or mental impairment that substantially limits one or more of the major life activities of such individual,' (2) 'has a record of such impairment,' or (3) is regarded by her employer as having such an impairment."[33] Plaintiff contends that her depressive disorder and anxiety are mental impairments that substantially limited one or more of her major life activities at the time of the relevant events and that she had a record of such impairments.[34]

Under the first prong of the ADA's definition of disability, Plaintiff must show not only that she actually has a mental impairment but also that such an "impairment [ ] substantially limit[ed] one or more major life activities."[35] It is undisputed that Plaintiff suffered from the mental impairments of depressive disorder and anxiety as shown by the

---

[31] 42 U.S.C. § 12112(a).

[32] *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 195 (2002).

[33] *Gruener v. Ohio Casualty Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008) (quoting *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999)); *see also* 42 U.S.C. § 12102(2).

[34] Depression and anxiety meet the EEOC definition of mental impairment. § 1630.2(h)(1) & (2).

[35] 42 U.S.C. § 12102(1)(A).

medical evidence in the record,[36] and Plaintiff points to ways that she contends that her depressive disorder and anxiety substantially limited her performance of several major life activities, e.g., her ability to concentrate, think, learn, communicate, socialize, perform housework, maintain personal grooming, sleep, eat, cook, care for her child, and prevent mood swings and abnormal thoughts.

The ADA, as amended by the ADA Amendment Act of 2008 ("ADAAA"), rejected the demanding definition for "substantially limits" that the Supreme Court had laid out in *Toyota Motor Mfg., Ky., Inc. v. Williams*.[37] That standard required an individual to be prevented or severely restricted from doing activities that were of central importance to most people's daily lives. The term "substantially limits" is now "interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the [2008 Amendments]"[38] and is based on how the individual functions as compared to the general population.[39] "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity

---

[36] In its response, AT&T argues that "it is not clear" from the record "what the duration of the alleged impairment was." (Resp., p. 3, ECF No. 46.) Plaintiff's statement of undisputed facts references medical records showing, *inter alia*, a diagnosis of depressive disorder and anxiety on April 11, 2014 (¶ 6), intensive treatment at Psycamore LLC beginning May 1, 2014 (¶ 10), a physician's statement from Psyamore dated May 7 noting "severe depression" (*id.*), documentation from HealthQuest on June 11, 2014, noting depression and increased anxiety with panic attacks and rapid mood swings (¶ 17), a psychological assessment signed by Plaintiff's psychiatrist on June 3, 2014, that referenced Plaintiff's January 2013 "breakdown" and "psychosis, paranoia" and severe disorientation (¶ 20), and a statement from Plaintiff's provider on June 13, 2014, that Plaintiff was in week two of a ten week program (¶ 18). (Pl's SOF, ECF 40-2.) At a minimum, the evidence shows that Plaintiff's mental impairments began in January 2013 and lasted through her termination date of July 3, 2014. Under the ADA, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102.

[37] 534 U.S. 184, 197 – 199 (2002).

[38] 29 C.F.R. § 1630.2(j)(1)(iv).

[39] *Id.* at § 1630.2(j)(ii).

as compared to most people in the general population...."[40] The list of "major life activities" was broadened in 2008 to include, but is not limited to, "caring for oneself, performing manual tasks … sleeping .... speaking … learning, reading, concentrating, thinking, communicating, and working."[41]

Under the amended statute, both the definition of "disability" and the term "substantially limit" are to be construed in favor of broad coverage.[42] Additionally, the regulations indicate that "substantially limits" is "not meant to be a demanding standard."[43] In amending the ADA, Congress sought to "help move the focus from the threshold issue of disability to the primary issue of discrimination.''[44] Congress intended that using a new lower standard would "make the disability determination an appropriate threshold issue but not an onerous burden for those seeking accommodations or modifications.''[45]

AT&T argues that expert testimony is needed to show a causative link between Plaintiff's mental impairments and the limitations of a major life activity as compared to the

---

[40] *Id.*

[41] 42 U.S.C. 12102(2)(A).

[42] *Id.* at § 12102(4)(A).

[43] 29 C.F.R. § 2630.2(j)(1)(i). The regulations are not controlling, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986); instead, they represent "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Id.* (internal quotations omitted). However, as a general matter, deference should be given to an agency's interpretation of a regulation when the agency has been given responsibility to issue regulations under the statute in question, to explain the responsibilities of those concerned under the statute, and to enforce the statute in court. *See Bragdon v. Abbott*, 524 U.S. 624, 646 (1998).

[44] 76 Fed. Reg. 16978, 17009, 2011 WL 1060575 (Mar. 25, 2011) *See also id.* at 17000 ("The ADAAA and the EEOC's regulations also make clear that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, not - whether the individual meets the definition of disability. ADAAA Section 2(b)(5).")

[45] *Id.*

13

general populace "to a reasonable degree of medical certainty."[46] AT&T has not cited any law in support of its argument that such testimony is necessary. To the contrary, Congress amended the ADA to lessen the need for "costly experts to address 'disability' and streamline the issues requiring judicial attention."[47] Moreover, the *EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities* provides that "[e]xpert testimony about substantial limitation is not necessarily required. Credible testimony from the individual with a disability and his/her family members, friends, or coworkers may suffice."[48]

In the present case, AT&T has not refuted Plaintiff's testimony that her depression and anxiety negatively affected her mood, ability to concentrate, think, learn, communicate, and her appetite; caused her to suffer fatigue; led to difficulty sleeping; lessened her ability to prevent herself growing tearful; affected her punctuality; caused her to avoid social settings, housework, and exercise and neglect personal grooming; and prevented her from cooking because she burned herself and the food.[49] The medical record also shows that Plaintiff's depression affected her sleeping, her ability to arrive on time, and her cognitive skills.[50]

The determination of whether a plaintiff's impairment "substantially limits" a major

---

[46] (Resp., p. 4, ECF No. 46.)

[47] 76 Fed. Reg. 16978, 16997, 2011 WL 1060575 (Mar. 25, 2011). *See also* 29 C.F.R. § 1630.2(j)(1)(v), (j)(1)(vi) (A "comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis," and any "determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures.")

[48] http://www.eeoc.gov/policy/docs/psych.html. This guidance predates the 2008 amendment which "made it easier for an individual seeking protection under the ADA to establish that he or she has a disability." http://www.eeoc.gov/laws/regulations/adaaa_fact_sheet.cfm.

[49] (Pl's SOF, ¶ 2, ECF No. 40-2.)

[50] (*Id.* at ¶ 10.)

life activity requires an individualized assessment that compares the person's ability to perform the activity as compared to most people in the general population.[51] EEOC regulations seek to make this process more "predictable, consistent, and workable" by listing specific impairments and the life activities that they commonly impact.[52] These impairments will "virtually always be found to impose a substantial limitation on a major life activity."[53] Regarding Plaintiff's impairments, "it should easily be concluded that … major depressive disorder … substantially limit[s] brain function."[54]

The regulations, by using the words "virtually always" and "should easily be concluded," create a strong presumption, which AT&T has not refuted, that Plaintiff's severe depressive disorder and anxiety substantially affected a wide range of major life activities as compared to persons not suffering from those same impairments. Accordingly, Plaintiff is entitled to judgment as a matter of law on the issue of whether she had an actual impairment.

Plaintiff also contends that her severe depressive disorder and anxiety are disabilities covered by the ADA because AT&T had a record of Plaintiff's impairments. A plaintiff has a "record of impairment" if she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."[55] This prong includes "people who have recovered from previously disabling conditions ... but who

---

[51] *See* 42 U.S.C. § 12102(4)(A); 29 C.F.R. § 1630.2(j).

[52] 29 C.F.R. § 1630.2(j)(3)(i).

[53] *Id.* at § 1630.2(j)(3)(ii).

[54] *Id.*

[55] *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 339 (6th Cir. 2002); 28 C.F.R. § 35.104 (2005); 29 C.F.R. § 1630.2(k).

may remain vulnerable to the fears and stereotypes of their employers."[56] The plaintiff only needs to show that "at some point in the past" she had a substantially limiting impairment.[57] However, "some diagnosis must explain the duration or severity of the impairment," and "self-described symptoms" . . . "without corroborating medical evidence or any diagnosis are insufficient to establish a substantial limitation on a major life activity."[58]

     Here, it is undisputed that AT&T was repeatedly notified by Plaintiff and her medical providers of her depression and anxiety. Defendant received Plaintiff's requests for STD and leave for depression and eventually granted it; paperwork signed by physicians and therapists was submitted by Plaintiff's medical providers in April, May, June and July, 2014; and AT&T received numerous telephone calls from Plaintiff and medical providers regarding Plaintiff's mental impairments, how the impairments affected her daily life activities, and her need for ongoing treatment. Plaintiff's undisputed facts show that AT&T was aware that Plaintiff was in treatment for depression in April, May, June, and July 2014. All this documentation records Plaintiff's depression, anxiety and ongoing need for treatment of those impairments. Accordingly, the Court finds as a matter of law that AT&T had a record of Plaintiff's mental impairment, and, therefore, she was disabled as defined by the ADA.

     Because the undisputed facts show that, at all times relevant, Plaintiff was defined as

---

[56] *Spence v. Donahoe*, 515 F. App'x 561, 570 (6th Cir. 2013) (quoting *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 509 (7th Cir. 1998)).

[57] *Knight v. Metro. Gov't of Nashville & Davidson Cnty., Tn.*, 136 F. App'x 755, 760 (6th Cir. 2005) (holding that a police officer who was not presently impaired, but who was previously injured on the job and received disability pensions for twenty years, during which time he worked intermittently, had raised a factual dispute as to whether he had a record of disability) (citing *Lloyd v. E. Cleveland City Sch. Dist.*, 232 F. Supp.2d 806, 812 (N.D. Ohio 2002)).

[58] *See Rader v. Upper Cumberland Human Res. Agency*, 2016 WL 1118211 at *7 (M.D. Tenn. Mar. 22, 2016) (quoting *Neely v. Benchmark Family Servs.*, 2016 WL 364774 at *5 (6th Cir. Jan. 26, 2016)).

disabled under the Americans with Disabilities Act (as amended), 42 U.S.C. § 12101 *et seq.* under both the "actual impairment" and "record of impairment" prongs, she is entitled to partial summary judgment, and her motion is **GRANTED**.

**IT IS SO ORDERED.**

                                      **s/ S Thomas Anderson**
                                      S. THOMAS ANDERSON
                                      UNITED STATES DISTRICT JUDGE

                                      Date: May 16, 2016.